The Honorable Paul Weaver State Representative P.O. Box 33 Violet Hill, AR 72584-0033
Dear Representative Weaver:
I am writing in response to your request for my opinion on the following question:
 Is it legal for an ambulance service to enter into a contract with Izard County following the guidelines with [sic] Izard County of Ordinance No. 0-81-13?
Your request is a follow-up to one I addressed in Ark. Op. Att'y Gen. No. 2001-007, in which you inquired on behalf of the Izard County Judge whether the referenced contract violated "any federal law." Unaccountably, this office was not provided with either the contract or the ordinance. Moreover, although the current EMS provider had reportedly asserted that a contract fashioned in accordance with the ordinance would violate federal law, the request failed to specify what law it would purportedly violate. Given this dearth of information, I remarked that I could not opine on the legality of the contract, whose interpretation would in any case involve factual inquiries I am neither authorized nor equipped to address. I did opine that if a contract were fashioned in accordance with the described ordinance — a condition I was unable to determine has been met in this case — it should withstand any claim that the county was diverting the cost of indigent ambulance transportation to Medicare in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"). My previous opinion cannot and should not be read as offering any conclusion other than that just summarized.
In support of your latest request, you have enclosed Izard County Ordinances Nos. 0-80-21 and 0-81-13. Briefly stated, the ordinances create a service district in which each household is assessed $15.00 per year to provide ambulance service. The ordinances further specify that the EMS provider additionally may recover from private insurers and Medicare, if available, but not from any district resident who has paid the assessment and used the service.
You have further provided two opinions from legal counsel, which were apparently available but not produced to this office with your first request. These opinions focus not so much on the ordinances (one fails to mention them at all) as on the legal effects of the specific contract at issue, which has still not been produced to this office. I have neither the authority nor the inclination to draw factual conclusions regarding the effects of a contract I have never seen.
I am further disinclined to enter into a debate with the authors of the two opinions you have supplied, which focus on relatively abstruse aspects of federal law that this office is ill-equipped to address. As you know, my primary advisory function is to counsel state legislators, prosecutors and other officials on matters of state statutory and constitutional law. A.C.A. § 25-16-706. The counsel who drafted the opinion letters apparently feel that the contract as construed by the county violates the FCA and the federal anti-kickback statute,42 U.S.C. § 1320A-7b(b), insofar as it supposedly calls for a waiver by the EMS provider of Medicare deductibles and co-payments. Although I find it troubling that both counsel fail even to address the possibility that the payment to the EMS provider of the annual tax assessment might satisfy the requirement that deductibles and co-payments be paid, I am unable formally to opine that such payment would avoid any exposure to allegations of fraud. However, I will note that I have contacted the Office of the Chief Inspector General in Washington, D.C. and been advised that the actuarial sufficiency of the assessment to cover deductibles and co-payments would be an area of keen interest to that office should it find occasion to review the contract at issue. Whether the tax assessment is sufficient to avoid charges of fraud is obviously a question of fact that I cannot address. I am further unable to predict whether the OIG would interpret the payment of the tax assessment as an acceptable substitute for the payment of deductibles and co-payments. I suggest that the parties address these questions to their respective counsel and to the OIG, which has informed me that it would be more than willing to render an advisory opinion. The procedure for requesting an advisory opinion from the OIG is set forth in detail at42 C.F.R. Part 1008.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh